**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SI03, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No:  1:25-cv-00103-SNLJ |
| v. | ) |
| | ) |
| THE MBP COMPANY, LLC | ) |
| d/b/a MARRON FOODS, | ) |
| | ) |
| *Defendant.* | ) |

**MARRON FOODS' PARTIAL OPPOSITION TO**
**MOTION TO WITHDRAW AS COUNSEL AND FOR STAY AND**
**CROSS MOTION FOR RELATED RELIEF**

The MBP Company, LLC d/b/a Marron Foods ("Marron Foods") respectfully submits this Partial Opposition to the Motion to Withdraw as Counsel and For Stay filed by counsel for SI03, Inc. ("SI03"), Kevin J. O'Shea and O'Shea Law LLC (Doc. 37) (the "Motion") and Cross Motion for Related Relief. For the reasons provided herein, Marron Foods respectfully requests that the Court: (1) deny the request for a 90-day stay of proceedings except as to mediation, which should be stayed until replacement counsel has entered an appearance on behalf of SI03; (2) hold in abeyance Mr. O'Shea's request to withdraw as counsel of record for SI03 until replacement counsel has entered an appearance or thirty (30) days, whichever occurs first; (3) order that SI03 shall have thirty (30) days from the date of the order to obtain replacement counsel; (4) order that should SI03 fail to obtain replacement counsel within that thirty-day period, SI03 will be subject to default; and (5) grant such other and further relief as the Court deems just and proper.

1

**INTRODUCTION**

The present Motion comes as Marron Foods confronts an evidentiary crisis created by SI03. On February 25, 2026, SI03 represented under oath that the whey protein concentrate agglomerated by Marron Foods – the product at the center of this dispute – remained in its sole possession, custody, and control. Within days, on or about March 4, 2026, SI03 entered an agreement to sell the product to Creative Compounds, LLC ("Creative Compounds"), a non-party entity located in Scott City, MO with extensive ties to SI03, without prior notice to Marron Foods. SI03 did not disclose the transaction until *weeks later* in response to an inquiry from Marron Foods. SI03 knew the transaction would deprive Marron Foods of the ability to inspect, sample, and test the very product on which the parties' claims, counterclaims, and defenses depend – yet proceeded with it nonetheless. The spoliated evidence calls into question both SI03's ability to prove its case and the integrity of the evidence.

After learning of the transfer, Marron Foods sought urgent discovery from both SI03 and Creative Compounds regarding the transaction and the current status and condition of the at-issue product. To date, Marron Foods does not know whether the product still exists, how it has been stored, or whether it has degraded to the point where reliable testing is no longer possible. Because whey protein concentrate has a defined shelf life tied to storage conditions – including temperature and relative humidity controls – these are time-sensitive questions that go to the heart of the parties' claims, counterclaims, and defenses. SI03 knows this, yet Marron Foods' discovery requests have largely gone unanswered.

2

SI03's decision to terminate Mr. O'Shea at this juncture risks compounding the prejudice to Marron Foods. Mr. O'Shea has represented SI03 throughout the litigation. Upon learning of the transaction, Marron Foods determined that Mr. O'Shea also serves as Creative Compounds' registered agent in Missouri and, on information and belief, represents Creative Compounds on some or all legal matters.

Given the spoliation questions raised by the Creative Compounds transaction,[1] Marron Foods has sought clarity on the nature and scope of Mr. O'Shea's involvement in the transaction, if any, including a privilege log of any communications relating to the transfer. Mr. O'Shea has not responded. He is uniquely positioned to address these issues given his multiple roles with SI03 and Creative Compounds, and permitting his immediate withdrawal would leave Marron Foods without any practical avenue to obtain this critical information. SI03 knows this. SI03 elected to terminate Mr. O'Shea just as Marron Foods seeks critical discovery into the transaction. The Court should therefore hold Mr. O'Shea's withdrawal request in abeyance to allow these issues to be addressed.

Finally, SI03, who brought this lawsuit as Plaintiff, has terminated its attorney with no apparent plans for any replacement counsel. Given the pressing discovery issues described above, the Court should order SI03 to obtain replacement counsel within thirty (30) days of its order. If SI03 – a corporate entity incapable of proceeding *pro se* – fails to do so, Marron Foods requests that the Court find SI03 subject to default.

---

[1] Marron Foods reserves all rights in relation to the Creative Compounds transactions, including the right to seek sanctions at the appropriate time.

## FACTUAL BACKGROUND

1.      On January 13, 2026, SI03 filed its Second Amended Complaint (Doc. 31) ("Complaint") asserting breach of contract and warranty claims against Marron Foods arising out of certain agglomeration services that Marron Foods performed on 35,000 pounds of whey protein concentrate 80% supplied by SI03.[2] SI03 alleges that the Agglomerated WPC produced by Marron Foods failed to comply with certain specifications, including as to moisture content. *Id.* at 5, ¶ 29.

2.      On January 27, 2026, Marron Foods filed its Answer to the Second Amended Complaint (Doc. 34) denying that SI03 is entitled to any relief, raising various affirmative defenses, and asserting counterclaims against SI03 for failure to pay its invoices. Amongst other defenses, Marron Foods asserts that the Agglomerated WPC ***complied*** with all specifications, including moisture content, as evidenced by, among other things, pre-shipment testing performed by Marron Foods. *Id.* at 30, ¶ 50 .

3.      The condition of the Agglomerated WPC is central to the claims, counterclaims, and defenses in this case. In its sworn interrogatory responses served on February 25, 2026, SI03 confirmed that the Agglomerated WPC remained in its sole possession, custody, and control. **Exhibit 1** (Interrogatory No. 18). Marron Foods has propounded multiple discovery requests seeking information and documents regarding the Agglomerated WPC, including the right to inspect and test it. *See*, *e.g.*, **Exhibit 2** (Marron

---

[2] Hereinafter, the product produced by Marron Foods is referred to as "Agglomerated WPC," and the raw whey protein concentrate provided by SI03 to Marron Foods is referred to as "Raw WPC." The "80%" indicates that the product contains approximately 80% protein by weight in its dry matter.

4

Foods' First Set of Requests for Production Nos. 3–5, 7–9, 11, 14, 19 & Second Set of Requests for Production Nos. 20–23).

4.      On March 31, 2026, SI03 informed Marron Foods that SI03 had sold the Agglomerated WPC to an alleged third party, Creative Compounds, LLC ("Creative Compounds"). **Exhibit 3** (SI03's Supplemental Response to Marron Foods' Interrogatory No. 11). SI03 had entered into the agreement to sell the Agglomerated WPC to Creative Compounds on or about March 4, 2026 – only days after SI03 served its February 25, 2026 sworn interrogatory responses representing that the Agglomerated WPC remained in SI03's sole possession, custody, and control. *Id.* SI03 failed to inform Marron Foods of the possibility of any transfer of the Agglomerated WPC, let alone that it had agreed to any such transfer on March 4, 2026.

5.      Marron Foods promptly informed SI03 of its surprise and concern that SI03 would dispose of material evidence central to the claims, counterclaims, and defenses, and sent formal correspondence to SI03 and Creative Compounds demanding that all documents and evidence relevant to the lawsuit be preserved, including the Agglomerated WPC and any retained samples. **Exhibit 4** (Letters to SI03 and Creative Compounds).

6.      In a telephone call on or about April 7, 2026, counsel for SI03 represented to Marron Foods that no corporate affiliation existed between SI03 and Creative Compounds. **Exhibit 5** (Declaration of Aaron Chickos)**.** However, Marron Foods has reason to question the accuracy and completeness of that characterization and intends to develop this issue in discovery. For example:

a. Creative Compounds' physical address in Missouri (4711 Nash Road, Scott City, Missouri) is the ***same street address*** previously used by SI03 and multiple entities believed to be associated with SI03 or Derek Cornelius (who verified SI03's interrogatory responses, *see* Ex. 1).[3]

b. Publicly available patent records demonstrate that Derek Cornelius is listed as an inventor on United States patent and patent applications assigned to Creative Compounds.[4]

c. SI03 sold the Agglomerated WPC to Creative Compounds for $3.25 per pound.[5] **Exhibit 6** (Purchase Order and Invoice). Based on publicly available spot pricing for similar WPC product, this price is ***only a fraction*** of the current pricing for instantized WPC 80% product.[6]

---

[3] *Compare* SI03 Biennial Registration Report, filed 02/03/2020, available at https://bsd.sos.mo.gov/BusinessEntity/BESearch.aspx?SearchType=0 (last visited May 14, 2026) (listing principal place of business) *with* Creative Compounds, LLC, "Contact Us", available at https://www.creativecompounds.com/contact.php (last visited May 14, 2026) (listing "physical address").

[4] These include Dicreatine Malate (Patent No. US 7,129,273 B2), Dicreatine Malate (Patent No. US 2004/0220263 A1), and Metabolic Enhancing Properties of Octopamine Salts (Patent No. US 2004/0204497 A1), available at United States Patent and Trademark Office, https://ppubs.uspto.gov/basic/ (last visited May 15, 2026).

[5] In addition to purchasing the Agglomerated WPC from SI03, Creative Compounds also supplied the Raw WPC to SI03 and, in turn, to Marron Foods.

[6] The U.S. Department of Agriculture tracks whey protein prices through its Agricultural Marketing Service (AMS) Dairy Market News. The May 7, 2026 report notes that "WPC 80% is reported in the mid $10s to mid $11s, with instant product in the low $11s to $12s." *See* **Exhibit 7**, (Excerpt of U.S. Dep't of Agriculture, Agricultural Marketing Service, Dairy Market News, Vol. 93, Rep. 19, May 7, 2026).

d.  In other cases, SI03 and Creative Compounds have brought claims as co-plaintiffs, defended themselves as co-defendants, and as both plaintiffs and defendants have been represented by the same counsel.[7]

e.  Mr. O'Shea (counsel and registered agent for SI03) is also registered agent for Creative Compounds.[8] Marron Foods' understanding is that Mr. O'Shea represents Creative Compounds on some or all legal matters. Mr. O'Shea declined to respond to Marron Foods' written request to confirm that he served as legal representation for Creative Compounds. *See* Ex. 5.

7.  On April 21, 2026, Marron Foods propounded additional discovery regarding the transfer to both Creative Compounds (Rule 45 subpoena commanding production of documents by May 8, 2026) and SI03 (additional RFPs). Mr. O'Shea accepted service of the subpoena on behalf of Creative Compounds. **Exhibit 8** (Email from Mr. O'Shea)**.**

8.  Additionally, that same day, Marron Foods explained in a letter to SI03 that its disposal of the Agglomerated WPC without prior notice constitutes spoliation. **Exhibit 9** (Letter to SI03). Marron Foods demanded that SI03 fully and immediately supplement its discovery responses in light of the transfer. *Id.* Given Mr. O'Shea's apparent joint representation of SI03 and Creative Compounds, the letter also sought a privilege log

---

[7] *See, e.g.*, *Molecular Nutrition, LLC et al. v. Derek Wayne Cornelius et al.*, 1:06-CV-00013 (E.D. Mo.) (co-defendants represented by same counsel); *Creative Compounds, LLC et al. v. Boldt et al.*, 3:10-CV-01411 (S.D. Cal.) / Related: 1:12-CV-21293 (S.D. Fla.) (co-plaintiffs represented by same counsel); *Law Offices of Thomas v. Creative Compounds et al.*, 14CG-CC00190 (co-defendants represented by same counsel).

[8] *See* Missouri Secretary of State, Business Entity Search, https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=554681 (last visited May 14, 2026) (showing Mr. O'Shea as registered agent).

identifying any communications with Mr. O'Shea concerning the transfer and reserved Marron Foods' right to challenge any such claim of privilege. *Id.*

9.      Marron Foods' April 21, 2026 discovery letter requested SI03 to confirm by April 28, 2026, whether it would agree to supplement its discovery responses and produce the materials described. *Id.* To date, SI03 has not responded.

10.      On May 1, 2026, Mr. O'Shea filed the present Motion (Doc. 37).

11.      The subpoena to Creative Compounds demanded production of responsive documents by May 8, 2026. **Exhibit 10** (Subpoena to Creative Compounds). To date, Creative Compounds has not responded.[9]

## ARGUMENT

### I.      The Motion to Withdraw Should Be Held in Abeyance for Thirty (30) Days.

Marron Foods does not oppose Mr. O'Shea's withdrawal, which is mandatory under Mo. Sup. Ct. R. 4-1.16(a)(3) when a client discharges a lawyer. However, rather than grant withdrawal immediately, Marron Foods requests that the Court hold the motion in abeyance for 30 days or until replacement counsel enters its appearance, whichever occurs sooner. This would allow time-sensitive discovery to proceed during that period pending Mr. O'Shea's withdrawal.

A. <u>SI03 Cannot Proceed in the Lawsuit Without Legal Counsel.</u>

Corporate entities, such as SI03, must be represented in federal court by and through counsel or legal representation. *See Painters Loc. Union No. 1265 v. Int'l Union of Painters*

---

[9] Marron Foods reserves all rights in relation to the subpoena and Creative Compounds' failure to timely respond.

*& Allied Trades*, No. 6:21-CV-03286-RK, 2022 WL 2374743, at *2 (W.D. Mo. June 30, 2022) (citing case law). The law does not permit a corporation to proceed *pro se*. *Id.*; *Nelson v. Acorn Stair & Woodwork, Inc.*, No. 4:15-CV-1200 CAS, 2017 WL 4176435, at *3 (E.D. Mo. Sept. 21, 2017). As this Court has explained:

> [T]he Court generally will not allow an attorney to withdraw when no other attorney has entered an appearance. Normally after counsel for a corporate defendant files a sufficiently supported motion for leave to withdraw as counsel, the Court will impose a withdrawal period in order to allow the corporate defendant time to find substitute representation . . . ***The corporate defendant is warned that if it fails to obtain substitute counsel, the Court will consider the defendant to be in default***.

*Id.* (citations omitted) (emphasis added).

Here, to prevent SI03 from immediately defaulting in the litigation, a 30-day abeyance of Mr. O'Shea's withdrawal request is appropriate and necessary. Courts in this district typically "will not allow counsel to withdraw from representation unless substitute counsel enters an appearance for the client." *Regions Bank v. Advanced Carwash Techs., LLC*, No. 4:12-CV-888 CAS, 2013 WL 12642749, at *1 (E.D. Mo. Apr. 17, 2013) (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993)) ("This rule is especially significant in cases where the client is a corporation.").

> B. The Court has Inherent Authority to Hold the Withdrawal Request in Abeyance to Allow Mr. O'Shea to Address Outstanding Discovery.

Even where withdrawal is mandatory under the rules of professional conduct, the Court retains inherent authority to manage the timing and effective date of counsel's departure. Federal courts possess broad inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co.*

9

*v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)); Fed. R. Civ. P. 37. That authority extends to supervising the withdrawal of counsel and ensuring that the withdrawal does not prejudice the opposing party or disrupt the orderly administration of the case. *See Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252 ERW, Doc. 1216, at PageID 23232 (E.D. Mo. Sept. 18, 2013) (holding motion to withdraw in abeyance to facilitate pressing discovery requirements); *see also Dunne v. Res. Converting, LLC*, No. 4:16-CV-01351-SRC, 2023 WL 4637179, at *5 (E.D. Mo. July 20, 2023) (ruling that "granting leave to withdraw would prejudice Dunne by depriving him of discovery" and allowing "counsel to withdraw would delay resolution of the case and would interfere with the Court's ability to control the case and enforce its Orders").

Marron Foods does not ask the Court to deny Mr. O'Shea's withdrawal. Rather, Marron Foods requests that the Court exercise its inherent authority to delay the effective date of withdrawal by thirty (30) days for several reasons.

First, a 30-day period will permit an orderly transition of representation. Mr. O'Shea is familiar with the claims, counterclaims, defenses, and the current state of discovery, and a brief period of continued involvement will facilitate the transfer of that institutional knowledge to replacement counsel.

Second, the abeyance period will allow time for responses to outstanding discovery that bear directly on the status and condition of the Agglomerated WPC – discovery that Mr. O'Shea is uniquely positioned to address given his roles as counsel and registered agent for both SI03 and Creative Compounds. As set forth above, Marron Foods has

10

propounded discovery to both SI03 and Creative Compounds that remain unanswered. Exs. 1, 2, 4, 9, 10. Marron Foods has sought a privilege log identifying any communications with Mr. O'Shea concerning the transfer. Exs. 8, 9. Immediate withdrawal would leave Marron Foods without any practical avenue to obtain this critical information. SI03 should not be permitted to benefit from terminating its own counsel by prolonging that delay.

Third, the abeyance period will provide SI03 with a defined window in which to retain replacement counsel, thereby avoiding the immediate default that would otherwise result from a corporate party's inability to proceed *pro se. See Nelson*, 2017 WL 4176435, at *3. A 30-day abeyance of the effective date of withdrawal is a measured and appropriate exercise of the Court's inherent authority that would facilitate discovery and help protect the interests of all parties.

## II.   SI03 Should Be Ordered to Obtain Replacement Counsel Within Thirty (30) Days.

The Court should impose a 30-day deadline for SI03 to obtain new counsel, and any failure to comply with that deadline should make SI03 subject to default. *See Carpenters' Dist. Council of Greater St. Louis v. Evans Concrete, Inc.*, No. 4:08-CV-49 CAS, 2008 WL 5191338, at *3 (E.D. Mo. Dec. 10, 2008) ("If defendants fail to obtain substitute counsel within that time, [defendants] may be subject to a default judgment . . . counsel's request to withdraw from representation of defendants will be granted when substitute counsel enters an appearance or on January 26, 2009, whichever occurs first."); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (because a corporation cannot proceed *pro se*, corporate defendant was in default on date court

11

allowed counsel to withdraw); *Regions Bank*, 2013 WL 12642749, at *1 (citation omitted) ("Entry of a default judgment is appropriate where a defendant corporation fails to comply with a court order to obtain counsel."). Here, SI03 – a corporation pursing claims *as Plaintiff* – has terminated its counsel without first obtaining replacement counsel. SI03 did so immediately following its apparent spoliation of the key evidence: the Agglomerated WPC. These are deliberate acts of SI03 that bear directly on its ability to pursue and prove claims in this lawsuit. Given this – and considering the potential prejudice to Marron Foods caused by further delay – the Court should order SI03 to obtain replacement counsel within thirty (30) days or else be in default.

### III. Any Stay of Discovery Would Prejudice Marron Foods and Should Be Denied.[10]

#### A. Outstanding Discovery Cannot Be Deferred for 90 Days.

Any stay would toll SI03's discovery obligations, prejudicing Marron Foods' ability to pursue critical information regarding the transfer. Additionally, a spoliation claim may well arise from the Creative Compounds transfer, and any stay of discovery would improperly reward SI03 at the precise moment when these questions are most pressing. Courts in this District do not permit procedural maneuvers to frustrate discovery into a party's own misconduct. *See*, *e.g.*, *SL EC, LLC v. Ashley Energy, LLC*, No. 4:18-CV-01377-JAR, 2021 WL 4281293, at *4–6 (E.D. Mo. Sept. 21, 2021) (imposing sanction of dismissal for failure to preserve records after litigation initiated); *Cape Dogwood Redevelopment Corp. v. Glob. Bowling, LLC*, No. 1:19-CV-23 RLW, 2020 WL 7390317,

---

[10] Marron Foods does not oppose a stay of mediation pending entry of replacement counsel.

at *3 (E.D. Mo. Dec. 16, 2020) (refusing to grant relief from default judgment after opposing counsel withdrew and had refused to answer even "basic discovery requests").

Here, SI03 should not be permitted to further delay discovery because of a situation it knowingly created. The Court should deny SI03's request for a stay of discovery.

B.  A 90-Day Stay Would Derail the Case Schedule.

Setting aside the discovery issues implicated by a potential stay, the current case schedule would be untenable. The first expert witnesses and reports are due August 21, 2026, while expert depositions must be completed no later than October 15, 2026. (Doc. 28 ¶ 3(b)). All discovery in this case must be completed no later than October 30, 2026. *Id.* ¶ 3(e). If a 90-day stay were granted, discovery would not resume until, at the earliest, early August 2026, providing insufficient time for the parties to comply with the Case Management Order. Thus, any such stay would necessarily require an extension of those deadlines.

The Court explained that the schedule "will be modified only upon a showing of ***exceptional circumstances***." *Id.* at PageID 142 (emphasis added). Plaintiff's decision to terminate its counsel without replacement counsel does not constitute exceptional circumstances sufficient to justify a 90-day pause that the current schedule simply cannot accommodate. *See Anderson v. Nebraska*, No. 4:17-CV-3073, 2020 WL 4195981, at *1 (D. Neb. July 21, 2020) ("Forcing the defendants to spend their time and resources trying fruitlessly to obtain even the most basic discovery during the 10-month hiatus created by the plaintiff's decision to discharge her lawyer is not something the Court is prepared to just let slide.").

13

C. If the Court Grants Any Stay of Discovery, it Should Exempt Third-Party Subpoenas.

As things stand, Marron Foods has no information as to the current status, condition, or storage of the Agglomerated WPC, including whether it has already been consumed or destroyed. The longer that Marron Foods is denied access to that information and the Agglomerated WPC – which has now been in the hands of Creative Compounds for approximately two months following the transaction – the greater the risk that material evidence will be lost. *See*, *e.g.*, *1st Tech., LLC v. Digital Gaming Sols. S.A.*, No. 4:08CV586 HEA, 2010 WL 883657, at *1 (E.D. Mo. Mar. 5, 2010) (explaining in patent context that "stays are generally disfavored where granting a stay would cause undue prejudice [or] would provide the non-moving party a clear tactical disadvantage . . ."); *ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. CV 12-446 (RHK/LIB), 2012 WL 13029504, at *2 (D. Minn. May 30, 2012) (explaining that "expedited discovery may be appropriate in cases where physical evidence may be consumed or destroyed"). Thus, if the Court does grant a stay of discovery, Marron Foods requests that the Court exempt from the stay Marron Foods' pursuit of third-party subpoenas including any subpoena directed to Creative Compounds.

## CONCLUSION

For the foregoing reasons, Marron Foods respectfully requests that the Court: (1) deny the request for a 90-day stay of proceedings except as to mediation, which should be stayed until replacement counsel has entered an appearance on behalf of SI03; (2) hold in abeyance Mr. O'Shea's request to withdraw as counsel of record for SI03 until replacement

14

counsel has entered an appearance or thirty (30) days, whichever occurs first; (3) order that SI03 shall have thirty (30) days from the date of the order to obtain replacement counsel; (4) order that should SI03 fail to obtain replacement counsel within that thirty-day period, SI03 will be subject to default; and (5) grant such other and further relief as the Court deems just and proper.

Dated: May 15, 2026

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Aaron Chickos*
    Aaron Chickos (62072 MO)
    Zachary A. Hollstrom (75607 MO)
    8001 Forsyth Blvd., Suite 1500
    St. Louis, MO 63105
    Phone:     314-480-1500
    Facsimile: 314-480-1505
    aaron.chickos@huschblackwell.com
    zach.hollstrom@huschblackwell.com

*Attorneys for Defendant The MBP Company,*
*LLC d/b/a Marron Foods*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 15, 2026, the foregoing was served by electronic mail on the following:

Kevin J. O'Shea
koshea@oshealawllc.com

*Attorney for Plaintiff*

<u>      /s/ Aaron Chickos      </u>