# Exhibit 9

# HUSCH BLACKWELL

Aaron J. Chickos
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Direct: 314.345.6343
Fax: 314.480.1505
aaron.chickos@huschblackwell.com

April 21, 2026

**VIA E-MAIL**

Kevin O'Shea
Principal
O'Shea Law LLC
1744 Ridge Road
Jackson, MO  63755
koshea@oshealawllc.com
*Counsel for SI03, Inc.*

Re:    *SI03, Inc. v. The MBP Company, LLC d/b/a Marron Foods*, Case No. 1:25-CV-
       00103 (E.D. Mo.) (the "Litigation")

Dear Kevin:

We write regarding the above-referenced lawsuit brought by SI03, Inc. ("SI03") against The MBP Company, LLC d/b/a Marron Foods ("Marron") and SI03's discovery responses and production. We also reference SI03's supplemental response to Interrogatory No. 11 served on March 31, 2026, and our April 3, 2026 letter to you in response to that supplemental response.

## I.    The Recent Sale/Transfer of Product to Creative Compounds

SI03's supplemental response to Interrogatory No. 11 discloses that on or about March 4, 2026, SI03 sold 33,862.656 pounds of the Whey Protein Concentrate 80 at issue in this lawsuit ("Product") to Creative Compounds, LLC ("Creative Compounds"), and directs Marron to SI03 000359–000369 for "specific information regarding the sale." As you know, the specifications, composition, condition, and other measurable properties of the Product remain central to the claims, counterclaims, and defenses in this Litigation. SI03's disposal of critical evidence relevant to claims brought by SI03 without prior notice to Marron of such disposal constitutes spoliation of evidence, which has irreparably prejudiced Marron and its ability to defend itself in this lawsuit. *See, e.g.*, *empirical foods, inc. v. Primus Builders, Inc.*, No. 8:19CV457, 2022 WL 219594, at *8 (D. Neb. Jan. 25, 2022); *SL EC, LLC v. Ashley Energy, LLC*, No. 4:18-CV-01377-JAR, 2021 WL 4281293, at *4–5 (E.D. Mo. Sept. 21, 2021).

SI03 must fully and immediately supplement its response to Interrogatory Nos. 11, 12, 14, and 18, and produce all documents responsive to Request for Production ("RFP") Nos. 3, 8, 9, 14,

HB: 4900-0991-8370.1

EXHIBIT
9

**HUSCH BLACKWELL**

Kevin O'Shea
April 21, 2026
Page 2

15, and 19 sufficient to show the complete circumstances of this transaction, including: all communications (internal and external) regarding the decision to sell, the timing and rationale; all negotiations, offers, counteroffers, and deal documents; all shipping, warehouse, lot/batch, and chain-of-custody records; all testing or inspection records from before and after the transfer; and any documents concerning the current condition, location, and disposition of the Product.

Interrogatory No. 18 asked SI03 to "identify and describe in detail the chain of custody of the Agglomerated Product from the time it left the possession, custody, or control of Marron Foods through the present." On February 25, 2026, SI03 served its verified interrogatory response providing that the product "remains to this day" in SI03's "humidity- and temperature-controlled food grade warehouse" and that "[n]one of either product was repackaged, relabeled, transferred, returned, destroyed (except in connection with testing), or otherwise dispositioned." That representation became false the following week when on March 4, 2026, unbeknownst to Marron, SI03 transferred to Product to Creative Compounds. Therefore, all documents and communications evidencing the Creative Compounds transaction and any explanation for how SI03's prior sworn statement came to be false must be produced.

## II.    The Relationship Between SI03 and Creative Compounds

Based on publicly available information, Marron has reason to believe that the relationship between SI03 and Creative Compounds is not arms-length. In particular:

- Creative Compounds' principal address of record is 4711 Nash Road, Scott City, Missouri, which is the same address previously used by SI03 and several entities that we believe to be associated with SI03.

- SI03's counsel is the Missouri Registered Agent for Creative Compounds. Our understanding is that SI03's counsel also represents Creative Compounds on some or all legal matters. We sought confirmation of that representation by email but did not receive a written response to that question.

- Creative Compounds was the vendor that originally obtained the Product from Saputo Cheese USA, Inc. pursuant to Purchase Order 4839-3 and supplied it to SI03 pursuant to Purchase Order 1080, meaning Creative Compounds is the original supplier and ultimate purchaser of the Product at issue in the Litigation.

- Public patent records demonstrate that Derek Cornelius – who verified SI03's interrogatory responses – is listed as an inventor on U.S. patent and patent applications assigned to Creative Compounds.

HB: 4900-0991-8370.1

# HUSCH BLACKWELL

Kevin O'Shea
April 21, 2026
Page 3

- Marron Foods has reason to believe that other connections exist between SI03 and Creative Compounds for which its investigation continues.

SI03's response to RFP No. 18 – which requested documents sufficient to evidence the corporate structure of SI03 and affiliated entities, including Idyllic Enterprises, LLC – was objected to and limited to SI03's "own corporate structure." That limitation is improper and must be withdrawn. SI03 must produce and supplement its interrogatory responses to address: (a) the complete ownership structure of SI03 and Creative Compounds, including members, managers, officers, and any overlapping ownership interests; (b) any agreements, arrangements, loans, profit-sharing, royalty payments, management fees, or other financial interests between or among SI03, Creative Compounds, Idyllic Enterprises, LLC, Derek Cornelius, and/or any related persons or entities; (c) the basis (financial and otherwise) on which the March 4, 2026 transaction was structured; and (d) all IP assignments, licensing arrangements, and royalty streams between or among these entities and persons.

## III.   SI03's Efforts to Market the Product for a Market Price

SI03 has put its damages squarely at issue, including the value of the Product. Yet your responses to Interrogatory No. 11 and RFP No. 9 – which requested all documents evidencing steps SI03 took to mitigate damages, including selling the Agglomerated Product or using it for a different purpose – contain nothing reflecting any effort to sell the Product on the open market at a market price. Please produce all documents reflecting SI03's efforts (if any) to identify buyers, solicit bids, engage brokers, or otherwise market the Product to unrelated third parties, including all communications and analyses regarding pricing, and any decisions or deliberations regarding whether and to whom to sell. This is directly relevant to mitigation and to whether the Creative Compounds transaction reflects reasonable fair market value.

## IV.   Mitigation

SI03's original mitigation response to Interrogatory No. 11 on February 25, 2026 referred only to purchasing replacement WPC and reformulating certain products, with no mention of the Creative Compounds transaction. SI03's supplemental response acknowledges the sale but does nothing more than disclose the quantity sold and pricing. This is inadequate. SI03 must produce all documents reflecting the economic terms of the transaction, how proceeds were applied or accounted for, and whether and to what extent SI03 claims that sale reduces its damages. The sale price, market context, arm's-length (or lack thereof) nature of the transaction, and any intercompany economics are all directly relevant to Marron's failure-to-mitigate defense.

## V.   Raw Material Supplied by Creative Compounds

In addition to purchasing the agglomerated Product, Creative Compounds also originally obtained the Product from Saputo pursuant to Purchase Order 4839-3 and then supplied it to SI03

HB: 4900-0991-8370.1

# HUSCH BLACKWELL

Kevin O'Shea
April 21, 2026
Page 4

pursuant to Purchase Order 1080. The condition and specifications of the Saputo-sourced raw material are central to the claims in this case. SI03 must produce all documents in its possession, custody, or control relating to: (a) the condition and specifications of the Saputo-sourced raw material as received by Creative Compounds (including any COAs, pre-shipment samples, and nonconformance records); (b) any communications between SI03 and Creative Compounds regarding the raw material's condition or specifications; and (c) any inspection, testing, or quality records relating to the material prior to, during, or after Creative Compounds' supply of it to SI03. SI03's response to RFP No. 14 – which requested all communications between SI03 and the entity or entities that supplied the raw product – was objected to as overbroad, yet SI03 agreed to produce responsive documents it deemed proportionate. Those documents do not appear to have been produced. Please produce all communications with Creative Compounds regarding the Saputo-sourced raw material.

## VI.   Representations, Warranties, and Terms and Conditions Governing the Creative Compounds Sale/Transfer

Please produce the complete terms and conditions governing: (a) Creative Compounds' sale of the Product to SI03 (including under Purchase Order 1080 and any related documents); and (b) SI03's sale/transfer of the Product to Creative Compounds (including under Purchase Order 4959 and any related documents). This includes any representations and warranties, disclaimers of warranty, indemnification provisions, inspection/acceptance rights, return rights, limitation of liability provisions, and any specifications or quality commitments. These terms are directly relevant to assessing, among other things, the commercial legitimacy of the transactions between SI03 and Creative Compounds, the parties' allocation of risk, and the Product's condition at the time of transfer.

## VII.   End Use, End Users, and "Replacement" Product

Interrogatory No. 12 asked SI03 to identify each intended use of the Agglomerated Product, including end products by type and brand name, volumes, manufacturing steps, and every reason the product allegedly could not be used. And Interrogatory No. 14 asked SI03 to identify every replacement purchase, including supplier, quantity, price, and critically, the actual or intended end use of that replacement product and any customers to whom it was sold. Both responses deflect entirely to business records under Rule 33(d), as does SI03's response to RFP No. 19 (intended end use of the Agglomerated Product, including final product descriptions, brand names, and required ingredient lists) and RFP No. 11 (procurement costs for replacement WPC and agglomeration services). This is inadequate. End-use and end-user identity goes to, among other things, whether the Product's alleged nonconformities prevented SI03 from using it for its stated purpose and whether SI03's damages are tied to any actual customer relationship, contract, or order. More fundamentally, the question of whether SI03's purported "replacement" purchases occurring months after the at-issue transaction were genuine mitigation measures attributable to

HB: 4900-0991-8370.1

# HUSCH BLACKWELL

Kevin O'Shea
April 21, 2026
Page 5

Marron's alleged breach – as opposed to separately acquired inventory unrelated to this dispute – cannot be resolved without the underlying purchase orders, invoices, contracts, shipping records, and end-use documentation. SI03 must supplement its responses to Interrogatory Nos. 12 and 14 with full substantive narrative answers. It must also produce all documents responsive to RFP Nos. 11 and 19, establishing both the procurement and the actual disposition of any claimed replacement product.

## VIII.   Alleged Damages Quantification

SI03 deferred its damages quantification to expert reports and directed Marron to its document production under Rule 33(d). SI03's response to RFP No. 15 – seeking documents sufficient to show lost profits, potential customers, volume of lost sales, and pricing – was limited to documents "sufficient to show and support" its damages claim, but no adequate production has been made. SI03 must produce all documents reflecting its lost profits analysis, customer pipeline, market pricing, and the basis for any damages it intends to prove, including the impact of the Creative Compounds transaction.

## IX.   Privilege Log

Given counsel's multiple roles with SI03 and Creative Compounds, and in light of the recent sale of the Product back to Creative Compounds, documents and communications reflecting counsel's involvement in any aspect of SI03's sale of the Product to Creative Compounds must be produced. These materials are responsive to multiple Interrogatories and RFPs, particularly RFP No. 14 ("All Communications between SI03 and the entity or entities that supplied the Raw Product relating to the Raw Product *or Agglomerated Product*.") and Interrogatory No. 7 ("Identify each third party with whom You communicated regarding the . . . Agglomerated Product . . . please identify any organization/entity with whom that person is associated, the date of the Communication(s), and the subject matter(s) of the Communication."). To the extent privilege is asserted over any such documents or communications, please provide a detailed privilege log identifying the date, participants, general subject matter, and basis for each withheld communication. We reserve the right to challenge any such privilege designations.

\*                \*                \*

Please confirm by April 28, 2026 whether SI03 agrees to supplement its responses and produce the materials described above. We reserve all rights, including the right to seek Court intervention, remedies related to evidence preservation and spoliation, and any other appropriate relief.

**HUSCH BLACKWELL**

Kevin O'Shea
April 21, 2026
Page 6

Respectfully,

HUSCH BLACKWELL LLP

_/s/ Aaron Chickos_
Aaron J. Chickos
Partner