**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| SI03, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No:  1:25-cv-00103-SNLJ |
| v. | ) |
| | ) Jury Trial Demanded |
| THE MBP COMPANY, LLC | ) |
| d/b/a MARRON FOODS, | ) |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL AND
FOR STAY (DOC NO. 37) AND OPPOSITION TO DEFENDANT'S
CROSS-MOTION FOR RELATED RELIEF (DOC NO. 38)**

All parties agree that SI03, Inc.'s ("SI03") counsel, OShea Law LLC ("O'Shea"),

may withdraw in view of SI03's discharge of O'Shea with immediate effect on April 30,

2026.  (Doc. No. 37, Mtn to Withdraw, at 1; Doc. No. 38, Def.'s Oppn., at 8 ("Marron

Foods does not oppose Mr. O'Shea's withdrawal, which is mandatory under Mo. Sup. Ct.

R. 4-1.16(a)(3) when a client discharges a lawyer.").)  The parties also agree that SI03, as

a corporate entity, cannot represent itself and, therefore, that O'Shea must continue

representing SI03 in this matter despite SI03's discharge of O'Shea pending the Court's

grant of the Motion to Withdraw.  *Painters Local Union No. 1265 v. Int'l Union of*

*Painters and Allied Trades*, Case No. 21-cv-03286-RK, 2022 WL 2374743, *2 n.3 (W.D.

Mo. June 30, 2022) ("Until leave to withdraw is granted pursuant to Local Rule 83.2, and

because Painters Local Union No. 1265 cannot proceed in a *pro se* manner, counsel

remains the counsel of record as to Painters Local Union No. 1265 in this case."); (Doc.

1

No. 38, Def.'s Oppn., at 8-9 (*citing Painters Local Union No. 1265*)).  Finally, the parties agree that the ADR Referral and associated schedule should be continued until after the SI03 retains replacement counsel, to provide the best opportunity for a successful mediation.  (Doc. No. 39, Joint Motion to Continue ADR Referral.)

The parties' only dispute is the amount of time needed for SI03 to retain new counsel and for that counsel to come up to speed.  SI03 requested a 90-day stay of all pending deadlines in this matter, *i.e.*, until August 1, 2026, to provide SI03 sufficient time to retain new counsel and for new counsel to review the relevant files.  (Doc. No. 37, Mtn to Withdraw, at 1.)  Defendant asks the Court to order SI03 to retain new counsel within 30 days.  (Doc. No. 38, Def.'s Oppn., at 10.)

"The Court has inherent power to stay proceedings as part of its power to manage its docket and the parties before it.  Doing so calls for an exercise of sound discretion, and the Court 'must weigh competing interests and maintain an even balance.'"  *Henry v. Iron County*, Case No. 24-cf-00218-MTS, 2025 WL 3280267, *1 (E.D. Mo. Nov. 25, 2025) (*citing and quoting Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936))).  Thirty days is objectively insufficient and highly prejudicial to SI03.  Substitute counsel must be identified and vetted; clear extensive conflict checks; negotiate a new engagement agreement; and review all files that have been transferred by O'Shea to SI03, including SI03's broader portfolio of pending litigation matters, comprising this matter and another litigation matter pending before this Court, as well as a litigation matter pending in Missouri state court.  These efforts are underway and will require until August 1, 2026, to properly complete.

2

Defendant will not be prejudiced by a complete stay of this matter until August 1, 2026.  The parties have agreed to postpone the mediation to a time after replacement counsel appears on behalf of SI03.  (Doc. No. 38, Def.'s Oppn., at 1 & 12 n.10 ("Marron Foods does not oppose a stay of mediation pending entry of replacement counsel."); *see also* Doc. No. 39, Joint Mtn to Continue the ADR Referral.)  Both parties have served and responded to written discovery, including interrogatories, and produced responsive documents.  SI03 supplemented its discovery responses to reflect its sale of 33,862.656 pounds of the whey protein concentrate ("WPC") that Defendant damaged and is the basis of Counts I and II of SI03's Second Amended Complaint.  (Doc. No. 31, SI03's 2d Am. Compl., at ¶¶ 7-27, 41-51.)  That sale allowed SI03 to mitigate its damages by roughly $110,000.00.  Defendant complains about this sale, inappropriately attempting to disparage SI03 with allegations that are neither relevant to the pending issues – counsel's withdrawal and SI03's request for a short stay – nor presented with full context.  (Doc. No. 38, Def.'s Oppn., at 4-5, ¶¶ 2-5.)  For example, Defendant excluded from its Opposition brief information about SI03's substantial mitigation of damages and the fact that both parties have numerous documents that record and verify the condition of the WPC at all relevant times – when SI03 purchased the WPC; when it was delivered to Defendant for processing; during processing, while the WPC was in Defendant's possession and control; and when Defendant delivered the WPC to SI03 post-processing. These documents were prepared by the parties themselves and third parties contemporaneously with the relevant activities.  The information disclosed in those documents provides the best evidence of the condition of the WPC at the relevant time

and both parties had received it prior to this litigation, in the ordinary course of business, and produced it in discovery.

Defendant also complains about the price that SI03 was able to obtain for the damaged WPC, despite its admission that WPC "has a defined shelf life" such that WPC loses value with every passing day.  (Doc. No. 38, Def.'s Oppn, at 2.)  Defendant relies entirely on a U.S. Dept. of Agriculture report to argue that SI03 could have sold the damaged WPC for a higher price.  (Doc. No. 38, Def.'s Oppn., at 6, ¶ 6.c. & n.6 (*citing* Exh. 7 to Def.'s Oppn).)  But that report does not identify either a market or pricing for the unusable agglomerated WPC that Defendant delivered to SI03 – *i.e.*, agglomerated WPC that is unmixable, contains an excessively high water content, and has a disproportionately high number of scorched particles.  (*Id.* at Exh. 7; *see also* Doc. No. 31, SI03's 2d Am. Compl., at ¶¶ 17-22.)  Rather, the report discusses, as one would expect, general pricing trends for clean, usable, mixable, unadulterated WPC.  (*Id.*)  These allegations have nothing to do with the present issues, *i.e.*, whether the Court should allow O'Shea to withdraw and the timing of such withdrawal.

Allowing third-party discovery to proceed while discovery in the underlying litigation is stayed, as Defendant requests, would prejudice SI03.  Both parties already have most, and perhaps all, of the relevant information that Defendant has requested via subpoenas it issued to two third parties:  Saputo Cheese USA Inc. ("Saputo"); and Creative Compounds, LLC ("Creative").  Saputo manufactured the WPC at issue in this litigation and sold it to Creative, which sold it to SI03.  The WPC was delivered in early 2025 directly from Saputo to Defendant, with documentation showing the condition of

4

the WPC, so that Defendant could agglomerate the WPC per its contract with SI03. (Doc. No. 31, SI03's 2d Am. Compl., at ¶¶ 7-16.)  Defendant agglomerated the WPC and, in doing so, damaged the WPC, leading to this litigation.  (*Id.* at ¶¶ 17-27, 41-51.) SI03 was fortunate to find a buyer for the agglomerated WPC that Defendant had damaged – Creative – which allowed SI03 to significantly mitigate its damages.  SI03 has produced to Defendant the documents relating to both relevant transactions with Creative – the original purchase of the WPC from Creative and the sale of the damaged WPC to Creative – *e.g.*, purchase orders; invoices; and shipping-related documents.  Thus, neither Saputo nor Creative likely has any additional relevant, non-duplicative documents to produce in response to Defendant's third-party subpoenas and staying third-party discovery will not prejudice Defendant.

However, allowing third-party discovery to proceed during this period, while SI03 searches for and brings aboard new counsel, would prejudice SI03.  SI03 has a right to participate in third-party discovery propounded by Defendant, including receiving and reviewing documents produced by the third-party subpoena targets and participating in all of Defendant's depositions of third-parties.  Forcing SI03 to participate in those third-party discovery matters prior to retaining new counsel and before new counsel has an opportunity to review the files and come up to speed would prejudice SI03.  Whatever small amount of information that may be in the possession of Saputo and Creative has likely already been provided to Defendant in the ordinary course of the original activities and in SI03's discovery responses.  Therefore, Defendant will not be prejudiced by

staying third-party discovery, while SI03 would be prejudiced by requiring third-party discovery to move forward prior to SI03 retaining new counsel.

Defendant admits that SI03's present counsel told Defendant's counsel during a telephone call on April 7, 2026, that no corporate affiliation existed between SI03 and Creative. (*Id.* at 5, ¶ 6.)  That admission correctly summarizes undersigned counsel's statement, which is true.  Despite its admission, Defendant has launched a fishing expedition attempting to bind SI03 and Creative together with imaginary ties.  (Doc. No. 38, Def.'s Oppn., at 5-7, ¶¶ 5-7.)  Defendant is apparently surprised that two companies in the same industry and located within a small geographic area are vendor and customer; that each of them independently has worked with the same industry consultant who also is located in the same small geographic area; and that both companies have at times been represented by the same counsel.  (*Id.*)  Defendant's failure to understand common business practices does not create prejudice for Defendant from staying third-party discovery.

Defendant will not be prejudiced by staying discovery until August 1, 2026, to allow SI03 sufficient time to identify and retain new counsel, and to provide that new counsel an appropriate time to review the relevant files.  However, SI03 will be prejudiced if the Court denies the requested stay; severely limits the deadline for new counsel to be appointed as Defendant requests; or allows third-party discovery to proceed while the underlying litigation proceeds, as Defendant also requests.  Therefore, O'Shea and SI03 request the Court to grant the Motion to Withdraw and for Stay so that all proceedings in this matter are stayed until August 1, 2026.

Dated:  May 26, 2026

Respectfully submitted,

/s/Kevin J. O'Shea
Kevin J. O'Shea #70436MO
OShea Law LLC
1744 Ridge Road
Jackson, MO  63755
Phone:  (573) 388-2296
Email:  koshea@oshealawllc.com

Counsel for Plaintiff SI03, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of May, 2026, the foregoing was electronically filed with the Clerk of the Court and served by operation of the Court's electronic filing system upon all counsel of record.

<u>*/s/* Kevin J. O'Shea</u>