**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SI03, INC.,** *Plaintiff,* | ) | |
| **v.** | ) | **Case No. 1:25-cv-00103-SNLJ** |
| **THE MBP COMPANY, LLC d/b/a MARRON FOODS,** *Defendant.* | ) | |

**PLAINTIFF SI03, INC.'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT THE MBP COMPANY, LLC'S MOTION TO COMPEL THIRD-PARTY CREATIVE COMPOUNDS, LLC TO PRODUCE RESPONSIVE DOCUMENTS**

**COMES NOW** Plaintiff/Counterclaim Defendant SI03, Inc. ("SI03"), by and through its undersigned counsel, and respectfully submits this Response Memorandum in Opposition to Defendant/Counterclaimant The MBP Company, LLC d/b/a Marron Foods' ("Marron Foods") Motion to Compel Third-Party Creative Compounds, LLC ("Creative Compounds") to Produce Responsive Documents (the "Motion").

Marron Foods' Motion should be denied. The Motion rests on the premise that the sale of the Agglomerated WPC to Creative Compounds "may well have foreclosed any possibility of further testing of the at-issue product." (Doc. 51 at 2). It has not. On May 21, 2026, SI03 made the pre-shipment, lot, and representative samples of the

product available for inspection at its facility. (Doc. 51-12 at 2). Marron Foods has never inspected them.

With that premise removed, Marron Foods purpose is to use a subpoena directed to a non-party to conduct an expansive investigation into Creative Compounds' corporate structure, finances, banking records, commercial relationships, and contracts with entities that are not parties to this case, in order to test a theory that SI03 and Creative Compounds are affiliated. Marron Foods has not established a factual basis sufficient to justify that discovery. To the contrary, SI03 has expressly represented that it has no corporate affiliation with Creative Compounds, and Marron Foods has acknowledged that representation in the record. (Doc. 38 at 5, ¶ 6; Doc. 38-5, ¶ 6).

The Federal Rules do not permit a party to impose broad and intrusive discovery obligations on a non-party merely because the requested information might uncover evidence supporting an unsubstantiated theory. Rule 26(b)(1) requires relevance and proportionality, and Rule 45 provides additional protection to non-parties and requires the issuing party to take reasonable steps to avoid imposing undue burden or expense. Marron Foods has not made the showing necessary to justify the discovery it seeks. The Motion should therefore be denied.

## I. FACTUAL BACKGROUND

### A. The underlying dispute concerns Marron Foods' performance of agglomeration services.

SI03's claims against Marron Foods arise from Marron Foods' agglomeration of whey protein concentrate pursuant to Purchase Order No. 1062. SI03 alleges that the

resulting Agglomerated WPC was defective, including with respect to moisture content, mixability, and scorched particles. Marron Foods disputes those allegations. Those issues are to be resolved between SI03 and Marron Foods. Creative Compounds is not a party to those claims and did not perform the agglomeration services that are the subject of them.

**B. The downstream sale of the product did not eliminate access to physical evidence.**

Marron Foods's Motion places substantial emphasis on the fact that the bulk Agglomerated WPC was subsequently sold by SI03 to Creative Compounds and characterizes that transaction as though it eliminated Marron Foods's ability to obtain or test physical evidence concerning the product. The record does not support that conclusion. SI03's May 21, 2026 discovery response advised Marron Foods that SI03 had available for inspection at its facility retains of the "[p]re-shipment samples, lot samples, or representative samples" of the whey protein concentrate and/or milk protein concentrate forming the basis of SI03's claims. (Doc. 51-12 at 2). SI03 did not conceal the availability of those samples, and Marron Foods has never inspected them.

**C. The sale of the product was disclosed and occurred in the context of SI03's mitigation efforts.**

SI03 disclosed its transaction with Creative Compounds in discovery. (Doc. 40 at 5). Marron Foods had previously placed SI03's mitigation efforts directly at issue by asserting that SI03 failed to mitigate its alleged damages. (Doc. 34 at 22, ¶ 24). SI03's sale of the Agglomerated WPC generated a recovery that reduced SI03's damages by roughly $110,000, and correspondingly reduced Marron Foods' exposure. (Doc. 40 at 3).

**D. Creative Compounds has searched for and produced responsive documents within its possession, custody, or control.**

Creative Compounds has advised Marron Foods that it searched for, gathered, and produced responsive documents within its possession, custody, or control, including the purchase order and commercial invoice for the downstream sale of the Agglomerated WPC, which Marron Foods filed under seal as Exhibit 9 to the Motion. (Creative Compounds Nos. 000061–000062; Doc. 51 at 4 and 8; Doc. 53-1).

Creative Compounds has further explained that a subpoena requires production of responsive documents that exist and are within the subpoenaed party's possession, custody, or control, and does not obligate a non-party to create documents or to search unrelated corporate and financial records because the requesting party speculates that such records might support a theory.

**E. SI03 and Creative Compounds have no corporate affiliation.**

Marron Foods' requests for Creative Compounds' corporate records rest on its speculation that SI03 and Creative Compounds may have some undisclosed ownership, control, or corporate relationship. That premise is unsupported. SI03 has expressly represented that no corporate affiliation exists between SI03 and Creative Compounds, and Marron Foods itself acknowledged that representation, stating that during an April 7, 2026 telephone call, counsel for SI03 represented that "no corporate affiliation existed between SI03 and Creative Compounds." (Doc. 38 at 5, ¶ 6; Doc. 38-5, ¶ 6 (Decl. of A. Chickos); Doc. 40 at 6.) Marron Foods added that it "has reason to question the accuracy and completeness of that characterization and intends to develop this issue in discovery."

(Doc. 38 at 5, ¶ 6.) What it offers in support is a vendor-customer relationship, a shared address, a shared business-services provider, common personnel supplied through that provider, common counsel in prior matters, and a common registered agent. (Doc. 38 at 5–7, ¶ 6; Doc. 51 at 9 n.4; Doc. 51-14; Doc. 51-15.) None of that is ownership or control, and ownership or control is the only fact that would make an arm's-length inquiry relevant to the claims and defenses in this case.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits discovery of nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

When discovery is sought from a non-party, Rule 45 imposes additional protections. The party issuing the subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Eighth Circuit has recognized that non-parties are entitled to "special protection against the time and expense of complying with subpoenas." *Miscellaneous Dkt. Matter No. 1 v. Miscellaneous Dkt. Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); accord *AssuredPartners, LLC v. Edgewood Partners Ins. Ctr., Inc.*, No. 4:24-cv-01711 SEP, 2025 WL 1797460, at *2 (E.D. Mo. June 27, 2025).

Rule 45 further requires a court to quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). The Eighth Circuit has also recognized that a subpoena may impose an undue burden where much of the requested information is irrelevant. *Stecklein & Rapp Chartered v. Experian Info. Solns., Inc.*, 113 F.4th 858, 862 (8th Cir. 2024). There, the Eighth Circuit affirmed the finding of undue burden where the subpoena sought substantial amounts of information that were irrelevant to the issues in the case. *Id*. The same principle applies here: the possibility that a broad request may uncover some potentially useful information does not make the entire category of information discoverable.

Courts applying Rule 45 likewise recognize that the scope of discovery from non-parties is subject to the relevance and proportionality constraints of Rules 26 and 34, and that "[c]oncern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022). Discovery is therefore not permitted "where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *AssuredPartners*, 2025 WL 1797460, at *2.

## III. SI03 HAS STANDING TO OPPOSE THE MOTION

Although the Second Subpoena is directed to Creative Compounds, the discovery Marron Foods seeks to compel consists in substantial part of SI03's own communications, contracts, and payment records, and Marron Foods' stated purpose is to test SI03's mitigation of its damages and SI03's relationship with Creative Compounds.

(Doc. 51 at 9 n.4, 12–14.) A party has standing to challenge a subpoena served on a non-party where it claims a personal right or privilege in the information sought, and a party has a personal right to control the disclosure of its own financial and business records held by a non-party. *EnviroPak Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754 ERW, 2014 WL 4715384, at *5 (E.D. Mo. Sept. 22, 2014); *Midland States Bank v. Ygrene Energy Fund, Inc.*, No. 4:21-CV-00354 JAR, 2022 WL 2915553, at *3 (E.D. Mo. July 25, 2022). SI03 does not purport to assert objections that belong to Creative Compounds alone, and it takes no position on matters that concern only Creative Compounds.

## IV. MARRON FOODS HAS NOT ESTABLISHED THAT THE DOWNSTREAM SALE ELIMINATED ITS ACCESS TO PHYSICAL EVIDENCE

Marron Foods' argument concerning the physical product does not justify the expansive discovery it seeks. Marron Foods suggests that the disposition of the bulk Agglomerated WPC has "foreclosed any possibility of further testing." That contention overlooks the physical evidence that remains available: SI03 advised Marron Foods that pre-shipment, lot, and representative samples remained available for inspection, and Marron Foods has not explained why those samples are insufficient for the testing or examination it contends is necessary. Marron Foods cannot establish that the downstream sale deprived it of physical evidence concerning the product.

Marron Foods' description of Creative Compounds' production is also incomplete. The Motion states that Creative Compounds produced "only" a redacted purchase order and lists "the terms and price of that downstream sale" among the things Marron Foods

claims to need. (Doc. 51 at 8–9.) But the document Marron Foods filed as Exhibit 9 states the quantity, delivery date, price per pound, and total of the downstream sale. (Doc. 53-1.) What is redacted is the customer's name and street address. Marron Foods does not explain how the identity of a non-party's customer would permit testing that the samples SI03 has made available do not, and no claim or defense in this case turns on who bought the product from Creative Compounds.

Nor can Marron Foods treat the same transaction as both a failure to mitigate and the destruction of evidence. Marron Foods pleaded that SI03 failed to mitigate its damages. (Doc. 34 at 22, ¶ 24.) When SI03 sold the product, Marron Foods recast the sale as spoliation. (Doc. 38 at 2–3; Doc. 51 at 1–2.) The record supports neither characterization: the samples remain available, and the transaction has been documented.

Nor does the relevance of the transaction open the door to the discovery Marron Foods seeks. Marron Foods is entitled to relevant discovery concerning the sale, and Creative Compounds has produced it, including the price associated with the product. (See Creative Compounds Nos. 000061–000062). Marron Foods has not demonstrated why unrelated bank statements, ACH records, wire transfers, corporate governance records, contracts, or other private financial information are necessary to resolve the actual issues in this case. The existence of a relevant transaction does not, standing alone, establish a need for unrestricted discovery into the purchaser's private affairs.

## V. MARRON FOODS' REQUESTS FOR CREATIVE COMPOUNDS' CORPORATE AND FINANCIAL RECORDS REST ON SPECULATION

Marron Foods seeks extensive corporate records from Creative Compounds, including organizational documents, operating agreements, membership records, membership certificates, ownership records, transfer records, resolutions, and consents. The asserted justification is Marron Foods' theory that SI03 and Creative Compounds may have an undisclosed relationship, a premise it has not established and, by its own account, intends to "develop" through this discovery. (Doc. 38 at 5, ¶ 6.)

Marron Foods instead seeks discovery to investigate whether its theory might be true. That is not a sufficient basis for imposing expansive discovery obligations upon a non-party. The fact that two companies do business with one another does not, without more, establish common ownership or control, and neither does operating in the same industry, using common service providers, or being represented at times by the same counsel.

The record reflects that Idyllic Enterprises provides business and professional services to SI03 and Creative Compounds, among others. (See SI03 000455–000464). Those circumstances do not establish an ownership or corporate relationship between SI03 and Creative Compounds. Marron Foods cannot convert ordinary commercial relationships into a basis for an expansive investigation of a non-party's private corporate records in the hope of discovering evidence supporting a theory it has not established. Courts in this District give a subpoena for a non-party's financial records careful scrutiny and require the requesting party to articulate how those records bear on the claims and defenses. *Evans v. Jarvis*, No. 4:25-cv-00288-SEP, 2026 WL 1242959, at *2 (E.D. Mo. May 6, 2026).

Marron Foods separately seeks extensive financial information, including bank statements, account records, wire transfers, ACH records, canceled checks, deposit records, and other financial information concerning Creative Compounds and its transactions with SI03 and potentially other entities. That request is extraordinary in scope, particularly as to a non-party, and Marron Foods has not established a factual basis for the arm's-length theory it offers to support it.

Marron Foods' arm's-length theory rests on its assertion that SI03 sold the Agglomerated WPC "far below market price." (Doc. 51 at 13; Doc. 38 at 6, ¶ 6(c)). The record answers that assertion. The invoice Marron Foods filed as Exhibit 9 shows what an unrelated purchaser paid Creative Compounds for the same lot, described on the face of the invoice as out of specification and sold as is, and the price SI03 received from Creative Compounds was very close to it. (Doc. 53-1; Doc. 38 at 6, ¶ 6(c)). The market for nonconforming product is what a buyer will pay for it. Marron Foods' comparison to the price of conforming product does not establish that the sale was other than at arm's length, and it does not supply a basis to investigate the ownership of a non-party.

The information Marron Foods actually needs concerning the transaction is also substantially narrower than what it seeks. Creative Compounds has produced the purchase order and invoice for the downstream sale, which together state the quantity, delivery date, price, and total. (See Doc. 53-1 at Creative Compounds Nos. 000061–000062). Marron Foods has not demonstrated why it needs Creative Compounds' bank statements, ACH records, wire transfers, canceled checks, or unrelated financial records

to determine the terms or value of that transaction, nor how financial transactions between Creative Compounds and unrelated entities bear on SI03's claims against Marron Foods. The requested financial discovery is disproportionate under Rule 26(b)(1) and unduly burdensome under Rule 45.

The breadth of the requests confirm that the subpoena has expanded beyond the transaction at issue. Marron Foods may seek discovery reasonably directed to testing a relevant factual contention, but it must identify a concrete connection between the information sought and a claim or defense. Rule 45 is not an unrestricted mechanism for investigating whether a theory might ultimately prove true, and that limit carries particular force where the subpoena reaches the private corporate and financial information of a non-party. The Eighth Circuit's decision in *Stecklein & Rapp* is instructive: the court there recognized that a subpoena imposed an undue burden where much of the requested information was irrelevant. 113 F.4th at 862.

## VI. MARRON FOODS HAS NOT ESTABLISHED A PARTICULARIZED NEED FOR DUPLICATIVE DISCOVERY

Marron Foods also seeks information that is available, or potentially available, from SI03 itself. SI03 is a party to this action; Creative Compounds is not. SI03 has already responded to Marron Foods' discovery requests concerning the Creative Compounds transaction, and Creative Compounds separately searched for and produced responsive documents within its own possession, custody, or control. Marron Foods nevertheless seeks to impose additional obligations on Creative Compounds based on its dissatisfaction with SI03's responses. Creative Compounds is not responsible for SI03's

discovery obligations, and if Marron Foods believes SI03 has failed to comply with its own, that does not establish that the substantially broader discovery sought from Creative Compounds is relevant, necessary, or proportional.

Courts in this District require a party to seek information from its opponent before burdening a non-party with a subpoena for the same material. *EnviroPak Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754 ERW, 2014 WL 4715384, at *4 (E.D. Mo. Sept. 22, 2014); see also *Fair v. Commc'ns Unlimited Inc.*, No. 4:17 CV 2391 RWS, 2019 WL 227982, at *2 (E.D. Mo. Jan. 16, 2019); *Ploen v. AIG Specialty Ins. Co.*, Nos. 21-cv-2248 (PJS/JFD), 21-cv-2264 (PJS/JFD), 2022 WL 2208328, at *3 (D. Minn. June 21, 2022), aff'd, 2022 WL 4533800 (D. Minn. Sept. 28, 2022).

## VII. THE REQUESTED DISCOVERY IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE

The proportionality factors independently support denial, and that analysis is especially important here because the subpoena is directed to a non-party and seeks highly intrusive categories of information. See *Miscellaneous Dkt. Matter No. 1*, 197 F.3d at 927; *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7–8. The central issues in this litigation concern Marron Foods' performance of its contractual obligations, the condition and specifications of the Agglomerated WPC, the alleged defects, causation, and damages. Creative Compounds' internal corporate governance and unrelated financial affairs have little, if any, bearing on those issues.

Marron Foods has access to physical evidence through the samples that remain available. Creative Compounds is a non-party entitled to the special protection afforded

by Rule 45, and it has already searched for and produced responsive documents, including information concerning the relevant transaction. Marron Foods nevertheless seeks highly intrusive corporate and financial information, including banking records, wire transfers, ACH records, and internal corporate documents, without establishing a corresponding evidentiary need.

The requested discovery appears directed in significant part toward investigating a speculative theory concerning an alleged relationship between SI03 and Creative Compounds rather than toward resolving an actual claim or defense. The burden and intrusion imposed upon Creative Compounds substantially outweigh any speculative benefit Marron Foods might obtain.

## VIII. NO PRIVILEGE LOG IS REQUIRED, AND RULE 45 PROTECTS CREATIVE COMPOUNDS' CONFIDENTIAL COMMERCIAL INFORMATION

Marron Foods seeks a privilege log based on speculation that Creative Compounds may possess communications involving counsel. Creative Compounds has represented that it has not withheld responsive documents on the basis of attorney-client privilege, work-product protection, or any other privilege. Rule 45(e)(2)(A) prescribes the procedure applicable when information is withheld on a claim of privilege; where nothing has been withheld on that basis, there are no documents for which a log is required. Marron Foods cannot manufacture a privilege-log dispute by speculating that privileged communications might exist.

Marron Foods' requests also extend into Creative Compounds' confidential commercial affairs, including transactions and contracts unrelated to the claims and defenses in this case. Rule 45 protects against disclosure of trade secret or other confidential commercial information, Fed. R. Civ. P. 45(d)(3)(B)(i), and speculation about a possible corporate relationship does not establish a substantial need for a non-party's confidential customer information, unrelated contracts, or banking records.

The nature of the information sought underscores the point. Marron Foods and Creative Compounds are both in the business of whey protein concentrate: Marron Foods agglomerates it, and Creative Compounds supplied the raw product at issue and purchased the agglomerated product. (Doc. 34 at 23–24, ¶¶ 10–12; Doc. 38 at 6 n.5). The identity of Creative Compounds' customer, its downstream pricing, and its contracts with third parties are the categories of information a company in the same line of business would value from a competitor, and such business information no bearing on whether Marron Foods' agglomeration of Purchase Order No. 1062 met specification. Rule 45(d)(3)(B)(i) exists to prevent a subpoena from being used to obtain them.

## IX. CONCLUSION

Rule 26(b)(1) requires relevance and proportionality, Rule 45 imposes additional protection for non-parties, and a subpoena may be unduly burdensome when it seeks substantial amounts of irrelevant information. *Miscellaneous Dkt. Matter No. 1*, 197 F.3d at 927; *Stecklein & Rapp*, 113 F.4th at 862. Marron Foods' subpoena exceeds those limits. The record does not establish that the downstream sale of the Agglomerated WPC deprived Marron Foods of access to physical evidence; pre-shipment, lot, and

representative samples remain available for inspection and have never been inspected. (Doc. 51-12 at 2). Creative Compounds has searched for and produced responsive documents within its possession, custody, or control, including documentation of the transaction at issue.

Marron Foods nevertheless seeks to compel extensive corporate records, ownership records, bank statements, wire transfers, ACH records, contracts, and confidential commercial information based principally on speculation that SI03 and Creative Compounds may have an undisclosed corporate relationship. SI03 has expressly represented that no such affiliation exists, and Marron Foods acknowledged that representation in the record. (Doc. 38 at 5, ¶ 6; Doc. 38-5, ¶ 6; Doc. 40 at 6). Marron Foods has not identified a concrete factual basis or particularized need sufficient to justify that discovery from a non-party.

Accordingly, Plaintiff/Counterclaim Defendant SI03, Inc. respectfully requests that the Court deny Defendant The MBP Company, LLC d/b/a Marron Foods' Motion to Compel Third-Party Creative Compounds, LLC to Produce Responsive Documents in its entirety, and grant SI03 such other and further relief as the Court deems just and proper.

Dated: September 17, 2026

Respectfully submitted,

**RIEZMAN BERGER, P.C.**

By: /s/ P. Tyler Connor
P. Tyler Connor, #69049
Pamela J. Meanes, #47241
Bentley J. Bender, #59544
7700 Bonhomme Avenue, 7th Floor
Saint Louis, Missouri 63105
Phone: (314) 727-0101
Facsimile: (314) 727-6458
Email: ptc@riezmanberger.com
pjm@riezmanberger.com
bender@riezmanberger.com

*Attorneys for Plaintiff/Counterclaim-Defendant SI03, Inc.*